Michael F. WISNIEWSKI, Plaintiff–Appellant,

v.

Johnny KENNARD, et al., Defendants–Appellees.

No. 89–1562.

United States Court of Appeals, Fifth Circuit.

May 29, 1990.

Robert Clary, Johnson, Bromberg & Leeds, Dallas, Tex. (court appointed), for plaintiff-appellant.

Peter L. Harlan, Asst. Dist. Atty., John Vance, Dist. Atty., Dallas, Tex., for defendants-appellees.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM Circuit Judges.

PER CURIAM:

This is an appeal from a grant of summary judgment in a damages suit filed by a state prisoner under 42 U.S.C. § 1983 against a deputy sheriff and the Dallas County Sheriff's Office. Wisniewski claims that upon his apprehension following an escape, the deputy sheriff handcuffed him, then placed his revolver in Wisniewski's mouth, threatened to blow his head off, and twice punched him in the stomach. He argues that as a result he was frightened and has suffered bad dreams.

The district court granted summary judgment for the deputy and the Sheriff's Office. There is some confusion as to whether Wisniewski's version of the facts was properly before the district court, but the district court did not rest its ruling on that point and neither do we. Wisniewski urges that this case presents the issue pretermitted in *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) (en banc). In *Morel*, we insisted upon proof of a significant injury as a threshold for the recovery of money damages under 42 U.S.C. § 1983 where excessive force in an illegal arrest was claimed. We did not decide whether this threshold can be reached absent physical injury. The parties also join issue on whether liability should be measured here

by the standards of the fourth amendment or substantive due process. We reach none of these difficult issues. The record is plain that Wisniewski's injuries are not significant within the meaning of *Morel.*

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

In this fourth amendment excessive force case, a material issue of fact exists which should have precluded the district court from granting summary judgment. Moreover, the plaintiff's injuries are significant under *Johnson v. Morel.*[1] As such, I respectfully dissent.

Michael F. Wisniewski ("Wisniewski"), the plaintiff, sued defendants Johnny Kennard, ("Kennard"), a deputy of the Dallas County Sheriff's Office, and the Dallas County Sheriff's Office, (the "Sheriff's Office"), under 42 U.S.C. section 1983. Wisniewski alleged that Kennard used excessive force when he apprehended Wisniewski. In response, the defendants moved for summary judgment. The district court granted the motion. The district court reasoned that: (1) the defendants established that Kennard acted within his discretionary authority and thus only used reasonable means to apprehend Wisniewski; (2) Wisniewski did not offer proof opposing this conclusion; and, (3) Wisniewski did not allege that he sustained a significant injury.

The district court erred. A district court should not grant summary judgment where material issues of fact exist.[2] The defendants themselves placed Wisniewski's version of the facts before the district court by attaching Wisniewski's verified pleading and sworn affidavit to their motion for

---

**1.** *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir. 1989) (en banc).

**2.** Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that: "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See USX Corp. v. Tanenbaum,* 868 F.2d 1455, 1457 (5th Cir.1989) ("On review of the grant of summary judgment we may affirm if,

after examining the entire record we are convinced that there is no genuine dispute of a material fact and that the moving party is entitled to judgment as a matter of law."); *Romano v. Merrill Lynch, Pierce, Fenner & Smith,* 834 F.2d 523, 527 (5th Cir.1987) ("The granting of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate when, viewed in the light most favorable to the opposing party, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law....").

summary judgment.[3] This pleading and affidavit created material issues of fact.

The State of Texas indicted Wisniewski. On July 29, 1988, the Sheriff's Office dispatched Kennard to Fort Lauderdale, Florida to escort Wisniewski, under warrant, to stand trial in Dallas. Wisniewski escaped from Kennard in Ft. Lauderdale International Airport. Kennard found Wisniewski in the parking lot hiding under a truck. Kennard alleged that he acted within his discretion in apprehending Wisniewski.

In his verified pleading and sworn affidavit, however, Wisniewski contradicted Kennard's version of the facts. Wisniewski alleged that Kennard handcuffed him, pressed his service revolver against Wisniewski's mouth, and told Wisniewski to open his teeth or Kennard would blow them out. Kennard had the hammer on his service revolver pulled back. Kennard continued to threaten Wisniewski, screaming, along with other threats, that he could blow Wisniewski's brains out. When Kennard noticed a security guard watching, he threw Wisniewski by his hair into a truck. When Wisniewski asked the security guard his name, Kennard punched Wisniewski in the stomach three times. A material issue of fact exists concerning Kennard's use of force. On this basis, the case should be remanded for trial.

Wisniewski also claimed that he suffered excessive fear, mental anguish and duress, and nightmares as a result of the incident. The majority states that these injuries are not significant under *Johnson v. Morel.*[4] I disagree.

The Supreme Court recently discussed Fourth Amendment scrutiny of excessive force claims brought under 42 U.S.C. section 1983. *Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The *Graham* Court stated that:

> [o]ur cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.[5]

Because Kennard abused Wisniewski before the state confined him but after he was arrested, this case raises the very issue discussed but not resolved in *Graham.*

The majority, however, averts deciding whether Kennard's liability should be measured by Fourth Amendment or substantive due process standards because the majority concludes that Wisniewski's injury is not significant within the meaning of *Morel.* This logic places the cart before the horse. Under *Morel,* significant injury is one of the three elements *necessary* to establish a *Fourth Amendment* excessive force claim. The *Morel* court stated that:

> [a] plaintiff can ... prevail on a Constitutional excessive force claim only by proving each of these three elements:
>
> (1) a significant injury, which
>
> (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was
>
> (3) objectively unreasonable.[6]

---

**3.** The defendants did not meet their summary judgment burden of proof. *John v. State of La. (Board of Trustees for State Colleges and Universities),* 757 F.2d 698, 708 (5th Cir.1985) ("It is absolutely clear, however, that Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges the initial burden of demonstrating that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.... If the moving party fails to discharge this burden, summary judgment must

be denied—even if the nonmoving party has not responded to the motion.").

**4.** *Morel,* 876 F.2d at 480.

**5.** *Graham v. Connor,* —— U.S. ——, —— n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443, 455 n. 10 (1989).

**6.** *Johnson v. Morel,* 876 F.2d at 480. The *Morel* court adopted this rule in response to the plaintiff's claim that the officer deprived the plaintiff of his "liberty interest in being free of excessive force contrary to the Fourth Amendment." *Id.* at 479.

By using *Morel* to analyze Wisniewski's claim, the majority has thus assumed that Wisniewski's claim should be analyzed by Fourth Amendment standards. If the majority has held that post-arrest, pre-trial detention excessive force claims merit Fourth Amendment scrutiny, I agree.

Wisniewski did, however, suffer a significant injury. Regarding significant injury, the *Morel* court stated that:

[i]njuries which result from, for example, an officer's justified use of force to overcome resistance to arrest do not implicate constitutionally protected interests. An arrest is inevitably an unpleasant experience. An officer's use of excessive force does not give constitutional import to injuries that would have occurred *absent the excessiveness of the force,* or to minor harms. Nor can transient distress constitute a significant injury....[7]

We think it unlikely that such a significant injury will be caused by unnecessary force without significant *physical* injury. However, on the facts before us here, we do not decide whether a significant but non-physical injury would be legally sufficient.[8]

By referring to minor harms and transient distress, the *Morel* court recognized that *de minimis* injuries, both physical *and psychological,* are not constitutionally actionable because they may occur *even if* the force used to arrest is objectively reasonable and not clearly excessive. Regarding the amount of force that an officer may use, the *Morel* court quoted *Graham* for the proposition that:

"the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."[9]

By adopting the officer's perspective, the *Morel* court recognized the need for police discretion in using force to make arrests. Under *Morel,* a conclusion that the police used objectively unreasonable and clearly excessive force thus means that they abused this discretion, or, conversely, that the plaintiff's privacy interests outweighed the need for the type of force the police used.[10] Given this abuse, under *Morel*'s calculus, moral eyes clearly see that any resulting injury must be addressed, intangible or not.

Adopting *Morel*'s language, Wisniewski's injury would not have occurred absent Kennard's excessive use of force. Kennard's use of force clearly exceeded the amount necessary to apprehend Wisniewski. Shoving a cocked loaded service revolver into a handcuffed suspect's mouth is, moreover, objectively unreasonable. The absurdity of any argument to the contrary is patent. Given this heinous behavior, I do not understand why the majority labeled Wisniewski's injury insignificant.

The rationale cannot be that Kennard acted unintentionally. He did not, even though the relevance of his state of mind is unclear. Perhaps, instead, the majority believes intangible injuries should not be actionable. To my mind, however, Wisniewski alleged, for the purpose of opposing summary judgment, that Kennard's actions were clearly excessive and objectively unreasonable under *Morel.* The government thus has a moral obligation to remedy the injuries inflicted, tangible or intangible. The Fourth Amendment demands no less.

---

7. *Id.* at 480.

8. *Id.* at 480 n. 1 (emphasis added).

9. *Id.* at 479 (*citing Graham v. Connor,* —— U.S. ——, ——, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455–56 (1989)).

10. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham,* —— U.S. at ——, 109 S.Ct. at 1871, 104 L.Ed.2d at 455. The Fourth Amendment protects individual's privacy and dignity interests. *See infra* note 12.

The Fourth Amendment protects against unreasonable searches and seizures.[11] To analyze Fourth Amendment excessive force claims the *Morel* court created the clearly excessive and objectively unreasonable standards. The majority's interpretation of *Morel's* significant injury requirement, however, creates an inconsistency between *Morel* and the amendment itself. Because although the Fourth Amendment prohibits *unreasonable* seizures, the government may avoid liability for injuries, *unreasonably* caused by clearly excessive force under *Morel*, that are intangible. Thus, according to the majority, when the injury vanishes from sight, so does the Fourth Amendment's cloth of protection. The majority decision strips citizens of the dignity that the amendment provides.[12]

By circumscribing the types of actionable injuries,[13] the majority has expanded, through the back door, the ambit of permissible force.[14] Through legal alchemy, the majority transformed the shield of discretion, emblematized by the officer's badge, into a sword that cuts intangible wounds. The state may now injure in ways that will remain legally invisible—albeit morally arrestive. Dutiful to this danger, the dissent in *Morel* cited from the brief of the United States as *AMICUS CURIAE* in *Graham*. The solicitor general argued that:

> [A] "severe injury" requirement is ... inappropriate. Under that standard, a guard has been declared to be 'as of the very essence of constitutional liberty' the guaranty of which 'is as important and as imperative as are *the guaranties of the other fundamental rights* of the individual citizen....'");

11. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV.

12. *United States v. Martinez–Fuerte*, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976) ("The Fourth Amendment imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."); *Davis v. Mississippi*, 394 U.S. 721, 726, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry...."); *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967) ("The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials."); *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State."); *Stanford v. Texas*, 379 U.S. 476, 484–85, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965) (The first, fourth and fifth amendments are "closely related, safeguarding not only privacy and protection against self-incrimination but 'conscience and human dignity and freedom of expression as well.'" (citing *Frank v. Maryland*, 359 U.S. 360, 376, 79 S.Ct. 804, 814, 3 L.Ed.2d 877 (1959) (dissenting opinion)); *Ker v. State of California*, 374 U.S. 23, 32, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726 (1963) ("Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safe-

13. One commentator argues that courts should expand recognition of the intentional infliction of emotional distress:

> The most cogent objection to the protection of such interests [i.e. mental injuries] lies in the "wide door" which might be opened, not only to fictitious claims, but to litigation in the field of trivialities.... It would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control. "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of mental hide is a better protection than the law could ever be." But this is a poor reason for denying recovery for any genuine, serious mental injury. It is the business of the law to remedy wrongs that deserve it, even at the expense of a "flood of litigation," and it is a pitiful confession of incompetence on the part of any court of justice to deny relief on such grounds. That a multiplicity of actions may follow is not a persuasive objection; if injuries are multiplied, actions should be multiplied, so injured parties may have recompense. So far as distinguishing true claims from false ones is concerned, what is required is rather a careful scrutiny of the evidence supporting the claim; and the elimination of trivialities calls for nothing more than the same common sense which has distinguished serious from trifling injuries in other fields of the law.

Prosser and Keeton, *The Law of Torts*, section 12 (Fifth Ed.1984).

14. *Johnson v. Morel*, 876 F.2d at 479.

police officer could, without any justification, beat a person on the head with a club if the beating causes only a bruise. *Similarly, a police officer could terrorize a nondangerous suspect by pointing a gun at his head if the chambers of the gun are empty.* In short, acceptance of the standard would allow the unreasonable use of force in cases where police conduct poses a grave risk and causes terror or even physical harm, but where the person seized, by chance, does not suffer a "severe injury." [15]

The majority has sanctioned Kennard's behavior. Except now, when the police threaten, they may have already handcuffed the suspect, loaded the guns, and pulled back the triggers. I cannot join. Kennard violated the very essence of privacy and freedom that the Fourth Amendment was meant to protect.

---

15. *Id.* at 481 (emphasis added).