**Ken MOUILLE, Plaintiff,**

**Laurie Rollins, et al.,
Plaintiffs–Appellants,**

**v.**

**CITY OF LIVE OAK, et al.,
Defendants–Appellees.**

No. 89–5662.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1990.

Rehearing Denied Jan. 8, 1991.

Tom Joseph, San Antonio, Tex., for plaintiffs-appellants.

Wallace B. Jefferson, Thomas W. Gendry, Groce, Locke & Hebdon, San Antonio, Tex., for defendants-appellees.

Before CLARK, Chief Judge,
REAVLEY and KING, Circuit Judges.

CLARK, Chief Judge:

This civil rights action arises out of incidents that occurred in and around San Antonio, Texas on January 9, 1987. Plaintiffs Kenneth Mouille (Mouille), Leroy Liberda (Liberda), Grace Rollins, and Laurie Rollins sued Timothy Britt (Britt), Mark Jackley (Jackley), Douglas Faesler (Faesler), and the City of Live Oak, Texas alleging violations of 42 U.S.C. § 1983. At the time of the incident, Britt was a Live Oak police officer, Jackley was the Chief of Police of Live Oak, and Faesler was Live Oak's City Manager.

The case was tried to a jury. At the close of the evidence, all defendants moved for directed verdicts. The district court granted each defendant's motions against

all claims by Liberda, Grace Rollins, and Laurie Rollins. The district court also directed a verdict for Faesler against all claims by Mouille, but denied the directed verdict motions by Britt, Jackley and the City of Live Oak against Mouille. The jury returned a verdict in favor of Britt, Jackley, and the City of Live Oak against Mouille's claims. Mouille does not appeal. Liberda, Grace Rollins, and Laurie Rollins appeal the directed verdicts against them. We affirm the district court's judgment against Grace Rollins and Laurie Rollins. We vacate the judgment against Liberda and remand.

### I. Background Facts.

Grace Rollins and Liberda were partners in a San Antonio insurance agency called L & R Associates (L & R). Mouille was an independent insurance broker with L & R. Laurie Rollins was an insurance salesperson at L & R. A large sign in the yard outside the L & R building indicated that it was an insurance agency.

Mouille arrived at the L & R office at approximately 10:30 a.m. and left a few minutes later in a blue Corvette. He testified that he returned to the office at approximately 11:00 a.m. and parked the Corvette near the office. At approximately 11:30 a.m., Officer Britt entered the office with his night stick drawn. The main entrance to the office opens into Grace Rollins' office. When Officer Britt entered, Laurie Rollins was in that front office, and Grace Rollins was entering it.

According to the plaintiffs, Britt burst in and slammed the front door against a wall dislodging some plaques. As he entered, he was yelling about a sports car. Britt then pushed Laurie Rollins, who was pregnant at the time, into a wall. Laurie began to cry, and Liberda and Mouille entered the room. Britt threw down his night stick, drew his gun, pushed it against Liberda's throat, and yelled expletives at him. To avoid the gun, Liberda jumped back and hit a wall. Britt had not identified himself as a police officer, but he was swinging his gun wildly and screaming about chasing someone in a sports car. Britt then saw

Mouille, arrested him, and took him away. All plaintiffs claim that no one challenged Britt's authority in any way.

Officer Britt's version of the facts is only slightly different. He claims that he had been chasing the blue Corvette at a high rate of speed. The chase ended at the L & R building. Britt admits that he pushed Laurie Rollins into the wall, but he claims that Liberda entered the room and challenged his authority. He does not dispute pointing his gun at Liberda. Britt maintains that the incident ended peaceably when he arrested Mouille.

Appellants Grace Rollins, Laurie Rollins, and Liberda allege that Officer Britt used excessive force in violation of section 1983. They further allege that defendants Jackley, Faesler, and the City of Live Oak are liable under section 1983 because they failed to train and supervise Britt, ratified his actions, and did not have policies in place to prevent incidents like this. The district court's bases for the directed verdicts were a finding that Liberda, Grace Rollins, and Laurie Rollins did not suffer significant injuries and a determination that Officer Britt was qualifiedly immune.

### II. Section 1983 Claims.

■ A trial court must review the evidence in the light most favorable to the party opposing the motion for a directed verdict. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). If the material evidence is such that reasonable minds could differ as to the relevant facts, the district court erred in directing a verdict. The same standard applies on appellate review. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986).

Appellants claim that Britt used excessive force which injured them in the course of arresting Mouille. The Supreme Court has stated that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment...." *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in origi-

nal). It is now clearly established law in this circuit that a section 1983 plaintiff claiming that a law enforcement officer used excessive force in violation of the Fourth Amendment must prove each of the following elements: "(1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) (en banc) (per curiam) (footnote omitted).

■ When a defendant raises the defense of qualified immunity, however, we must determine whether the defendant's conduct was qualifiedly immune before reaching the merits of the section 1983 claim. Britt argues, and the district court agreed, that his conduct was qualifiedly immune. At the time of the incident, Britt was a public safety official. As such, he is entitled to assert the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

■ Substantively, qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law. *See id.* at 639, 107 S.Ct. at 3038. When a plaintiff invokes a clearly established right such as freedom from excessive force, the appropriate inquiry is whether "[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Id.* at 640, 107 S.Ct. at 3039.

The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *See Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The conduct in question occurred in 1987. At that time, the standards set forth in *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. Unit A Jan. 1981) were clearly established law in this circuit.

In *Shillingford*, we held that to maintain an excessive force claim a plaintiff must prove that the defendant's action "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience...." *Id.* at 265. In this case, Britt is entitled to qualified immunity against the appellants' claims if a reasonable peace officer could conclude that Britt's conduct did not violate each appellant's right to be free from excessive force as enunciated in *Shillingford. See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

As to each appellant, our inquiry does not end if we determine that Britt's conduct was qualifiedly immune because we must then determine whether the other defendants may still be liable. The qualified immunity defense shields a defendant from individual liability when the defendant's actions are objectively reasonable. A defendant's conduct may in fact violate a plaintiff's civil rights under section 1983, but the defendant may nevertheless avoid individual liability by successfully asserting the qualified immunity defense. *See Melear v. Spears*, 862 F.2d 1177, 1188 (5th Cir.1989) (Higginbotham, J., concurring). In other words, a defendant whose conduct in fact violates a plaintiff's civil rights under current law is qualifiedly immune from individual liability if the defendant's conduct was objectively reasonable in light of clearly established law at the time of the conduct. Thus, a plaintiff whose civil rights were in fact violated may be able to recover from defendants who do not invoke qualified immunity even though the plaintiff may not recover from an individual officer who successfully invokes it. After

determining whether Officer Britt is entitled to qualified immunity as to an appellant's claim, we must determine whether the district court correctly directed a verdict against that appellant in favor of the other defendants.

## A. Liberda.

When Liberda jumped back from Officer Britt's actions, he fell against a door. He testified that this caused him to suffer injuries to his groin and a pinched nerve in his leg. He claims that his leg injury has been debilitating. He testified that he has not been able to stand upright for prolonged periods of time since the incident. He also testified that his leg injury has affected his ability to do his work. Liberda recruits insurance agents for L & R. He presented evidence to show that his leg injury has hampered his ability to recruit new agents and that recruitment has declined following the incident. He also introduced evidence to show that L & R's revenues significantly declined after his injury even though revenues had been steadily increasing up to that time. Defendants argued that Liberda's injuries are not significant and that Officer Britt is qualifiedly immune.

### i) *Qualified immunity.*

■ Our first inquiry is whether Liberda's injuries met *Shillingford*'s severe injury requirement. As of 1987, our case law established that the following injuries could be considered severe: partial paralysis from the chest down resulting from a gun shot wound in the neck, *see Languirand v. Hayden,* 717 F.2d 220, 222 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984), multiple bruises and scars to the head and body resulting from a severe beating, *see Roberts v. Marino,* 656 F.2d 1112, 1115 (5th Cir. Unit A Sept. 1981), a lacerated forehead sustained when a policeman smashed a camera with a nightstick while the photographer was taking a picture, *see Shillingford,* 634 F.2d at 266, and multiple contusions and lacerations resulting in a two-day hospital stay after a beating at the hands of a police officer. *See Hinshaw v.*

*Doffer,* 785 F.2d 1260, 1267 (5th Cir.1986). On the other hand, we had held that the following injuries were not severe: slaps to the face that caused no bleeding and did not knock the plaintiff down, *see Mark v. Caldwell,* 754 F.2d 1260, 1261 (5th Cir. 1985), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985), and minor bruises on the arm, scrapes on the face, and welts raised by handcuffs. *See Raley v. Fraser,* 747 F.2d 287, 289 (5th Cir.1984).

A jury may have discounted Liberda's proof. The trial court could not. Liberda testified that his leg injury was lasting and debilitating. The injury had significant adverse impacts on the partnership's revenues and Liberda's ability to perform his job. Although Liberda's groin injury alone might not be constitutionally actionably under *Shillingford,* the evidence of the pinched nerve in his leg added sufficient severity to his overall injuries to withstand the motion for a directed verdict based on a qualified immunity defense asserting lack of severe injuries.

Under the second *Shillingford* requirement, Liberda must show that Britt's conduct was grossly disproportionate to the need for action under the circumstances. The L & R office was obviously a place of business. Britt's actions in bursting into the office with his nightstick drawn, pushing a pregnant woman into a wall, yelling threats and expletives, drawing his gun, waiving it wildly at everyone in the office, pushing it against Liberda's throat, and threatening to kill him at a time when no plaintiff offered any physical resistance were grossly disproportionate.

Defendants argue that Britt had been in hot pursuit of a car driven at a high rate of speed and that excitement on his part was a reasonable reaction. Plaintiffs' proof showed that Britt's conduct occurred thirty minutes after Mouille's car had been parked. Accepting this scenario, his acts were bizarre and shockingly unreasonable. Defendants also argue that Liberda and Mouille confronted Britt with: "What in the hell are you doing?" Again, crediting the testimony of plaintiffs, Liberda and

Mouille entered the room after they heard screaming and commotion. Britt was already totally out of control. The record does not clearly reflect whether Britt thought that Liberda was a suspect or was concealing a suspect. In either case, viewing the directed verdict record most favorably to Liberda as we must, Britt's display of force was grossly disproportionate to any need under the circumstances.

The final *Shillingford* requirement is malice. The plaintiffs' evidence indicated that Britt cursed appellants and made repeated threats to "blow their heads off" even though they were unarmed, offered no physical resistance, and even though Grace and Laurie Rollins were definitely not suspects. This evidence combined with Britt's use of grossly disproportionate force is sufficient to create a jury issue on malice.

Under all three *Shillingford* requirements, Officer Britt's conduct was objectively unreasonable in light of clearly established law at the time. No reasonable peace officer could conclude that actions such as Britt's did not violate Liberda's Fourth Amendment right to be free from excessive force. Britt was not entitled to qualified immunity on Liberda's claims.

### ii) *Excessive force.*

 The district court also determined that the evidence was not sufficient to support a section 1983 excessive force claim. Although we analyzed Britt's qualified immunity defense under *Shillingford,* we must analyze Liberda's substantive section 1983 claim under the current standard as enunciated in *Johnson* because Liberda's excessive force claim, unlike the qualified immunity defense, is not temporally fixed.

The district court held that Liberda's injuries were not significant. Since Liberda's evidence showed that his injuries were severe under *Shillingford, a fortiorari* they were significant under *Johnson. See Johnson,* 876 F.2d at 480. Our holding that the evidence is sufficient to support a finding of a significant injury is fully consistent with our prior decisions. *See, e.g., Wisniewski v. Kennard,* 901 F.2d 1276 at 1277 (5th Cir.1990) (two punches in the stomach and transient fear are not significant injuries); *Johnson,* 876 F.2d at 480 (tightly-applied handcuffs causing permanent scars and resulting in disabling the plaintiff from employment for two weeks raise a fact issue as to significant injury).

Defendants argue that Liberda failed to comply with what they interpret as burden-of-proof language in *Johnson.* In that case, we stated that plaintiffs must demonstrate a significant injury which "resulted directly and only from the use of force that was clearly excessive to the need...." *Id.* at 480. Defendants contend that these words require plaintiffs to provide expert medical testimony showing that the plaintiff's injury was caused exclusively by the defendant's conduct. They also urge that Liberda's evidence on L & R's economic loss is deficient because no expert testimony negated other causes such as a downturn in the economy.

The language quoted from *Johnson* cannot be isolated to create a new and different rule of proof. *Johnson* also stated: "To determine whether a constitutionally actionable 'significant injury' has been inflicted, the court must consider only the injuries resulting directly from the constitutional wrong. There can be a constitutional violation only if significant injuries resulted from the officer's use of *excessive* force." *Id.* at 479–80 (emphasis in original). A plaintiff must prove that the injuries resulted from force that is clearly excessive and objectively unreasonable. Significant injuries resulting from force that is clearly excessive and objectively unreasonable are actionable. Insignificant injuries or injuries resulting from force that is not clearly excessive and objectively unreasonable are not. *Johnson* did not impose a mandatory burden requiring section 1983 plaintiffs to present expert medical testimony on causation, nor did *Johnson* require plaintiffs to establish economic loss by any particular form of proof.

In today's case, it is reasonable to infer from the plaintiffs' proof that Liberda's leg and groin injuries, which immediately followed, resulted from Britt's use of exces-

sive force. The evidence could also support a reasonable inference that Liberda's injury impaired his ability to recruit new agents for the partnership and that Liberda's inability to recruit caused L & R to suffer economic losses.

Based on our analysis of the objective reasonableness of Britt's conduct under *Shillingford,* we also conclude that the evidence raised fact issues on *Johnson's* requirements to show that Liberda's injuries "resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was ... objectively unreasonable." *Id.* at 480.

### B. Grace Rollins.

Grace Rollins was not hurt in any way. She claims that Officer Britt's actions terrified her, but she was mainly afraid for her pregnant daughter.

#### i) *Qualified immunity.*

■ Initially, we must determine whether Grace Rollins' injuries meet the severe injury requirement under *Shillingford.* We hold that they do not. Her emotional distress was not a severe injury. *See Lynch v. Cannatella,* 810 F.2d 1363, 1375–77 (5th Cir.1987).

Because Grace Rollins' injury was not severe, a reasonable officer could conclude that Britt did not violate Grace Rollins' right to be free from excessive force under *Shillingford.* Britt is entitled to qualified immunity on Grace Rollins' claims.

#### ii) *Excessive force.*

■ In *Johnson,* we stated that mere "transient distress" caused by an arresting officer's actions cannot constitute a significant injury for section 1983 purposes. *Johnson,* 876 F.2d at 480. In *Wisniewski v. Kennard,* 901 F.2d 1276 (5th Cir.1990), an arrestee claimed that an officer placed his gun in the arrestee's mouth and threatened to blow his head off. The arrestee claimed that he was frightened and suffered bad dreams. We held that the arrestee had not alleged a significant injury. *Id.* at 1277.

The district court held that Grace Rollins did not allege a significant injury. We agree. Thus, we hold that Grace Rollins' section 1983 claims against all defendants fail because her right to be free from excessive force was not violated.

### C. Laurie Rollins.

Officer Britt pushed Laurie Rollins into a wall. His hand impacted her chest under her left breast leaving a small red mark which faded away after a few hours. Laurie Rollins feared for the safety of her unborn child. She continued to fear for its safety until the baby was born unharmed and apparently normal. She testified that her anxiety made her feel sick during her pregnancy.

#### i) *Qualified immunity.*

■ Laurie Rollins' injuries were not severe. *See Lynch,* 810 F.2d at 1375–77. Britt is therefore entitled to qualified immunity on Laurie Rollins' claims.

#### ii) *Excessive force.*

■ Laurie Rollins' red mark is a "minor harm" which is not a significant injury. *Johnson,* 876 F.2d at 480. Her fear for her unborn child's safety and her alleged feelings of sickness during her pregnancy are properly characterized as "transient distress." *Id.; see Wisniewski,* 901 F.2d at 1277. Laurie Rollins did not establish a constitutionally significant injury. None of Laurie Rollins' section 1983 claims are actionable.

### III. Exclusion of Plaintiff's Exhibit 36.

Plaintiff's exhibit 36 is a letter from city manager Faesler to police chief Jackley. It is a proposed termination letter discussing alleged instances of misconduct by Jackley and other police officers. The plaintiffs offered the letter to show conduct by city officials which might impose section 1983 liability on Faesler, Jackley, the City of Live Oak, or some combination thereof. The district court ruled that exhibit 36 was irrelevant and therefore inadmissible. Plaintiffs appeal the district court's ruling. In light of our decision to remand this case

for further proceedings, we do not reach the issue.

### IV. Conclusion.

For the reasons set forth in this opinion, the decision of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

REAVLEY, Circuit Judge, concurs in the judgment only.