United States Court of Appeals,

Fifth Circuit.

No. 91–5673.

Ken MOUILLE, et al., Plaintiffs,

Leroy Liberda, Plaintiff–Appellant,

v.

The CITY OF LIVE OAK, TEXAS, Mark E. Jackley, Douglas Faesler, and Timothy Britt,
Defendants–Appellees.

Nov. 20, 1992.

Appeal from the United States District Court for the Western District of Texas

Before REYNALDO G. GARZA and GARWOOD, Circuit Judges and WERLEIN,[*] District Judge.

REYNALDO G. GARZA, Circuit Judge:

This civil rights action arises out of the events that took place on January 9, 1987, in San
Antonio, Texas. Late Friday morning, January 9, 1987, Officer Britt observed a blue Corvette
exceeding the posted speed limit by 27 miles an hour. Britt attempted to stop the vehicle; however,
a high speed chase ensued on interstate I–35 at speeds in excess of 95 miles per hour. Live Oak
Police Lieutenant, Gary Hopper, and the police dispatcher maintained radio contact during the chase.
According to the official log book, at 11:28 A.M. Britt first made radio contact, and reported that
he was traveling southbound on I–35 pursuing a blue Corvette.

The blue Corvette, which was being driven by Kenneth Mouille, exited the highway at
Walzem Road and hastily pulled into the L & R Associates ("L & R") parking lot. Both Britt and
Mouille emerged from their respective cars, and Britt informed Mouille that he was under arrest.
Britt's police car was a "marked unit," and he was wearing the distinctive blue police uniform
emblazoned with a salient badge, silver name tag, and police department emblems. Mouille
unmistakeably knew that he had been chased by a police car, and that Britt was a police officer.

[*]District Judge of the Southern District of Texas, sitting by designation.

Mouille responded to Britt's attempted arrest with a few expletives, and then bolted into L & R. The events that transpired inside the L & R offices form the basis of this suit.

Mouille sped into the building and then into the front office of L & R, shutting the door behind him. Mouille was yelling as he ran into the office, and the entire commotion stirred up everyone inside, especially Grace Rollins. Grace Rollins, who is Mouille's mother, is also Liberda's business partner at L & R, which is an insurance agency.

Britt did not know what he would encounter when he opened L & R's front door so he had his nightstick drawn, ready for the unpredictable. Britt threw open the door with a great deal of force, which knocked some plaques off the wall. Rollins immediately interposed herself between Britt and her son. Britt informed her about the high speed chase, and told that her son was under arrest. Britt then attempted to handcuff Mouille. Although Mouille pushed and shoved, Officer Britt eventually managed to handcuff Mouille, despite his uncooperativeness.

Just after Britt handcuffed Mouille, Leroy Liberda and Laurie Rollins entered the front office. Liberda and Laurie Rollins audaciously approached Britt to within arm's length, screaming at him. Britt was faced with a volatile situation and had to make an instinctive decision. He pulled out his revolver and admonished everyone to back off.

Liberda contends that Britt shouted expletives, cocked his gun, shoved it in Liberda's neck, and then threatened to blow his head off. Britt contends that the gun did not touch Liberda. As a result, Liberda jumped back into a door knob and allegedly suffered debilitating back and leg injuries.[1] Simultaneously, Liberda also urinated in his pants. Britt concedes that the sight of the gun caused Liberda to jump backwards into the door. Approximately three minutes elapsed from the time Britt entered the office until the time he emerged with Mouille.

Once outside the building, Britt placed Mouille in the backseat of his patrol car and contacted headquarters. At 11:36 A.M., Britt informed the dispatcher that Mouille was in custody. Two minutes later, at 11:38 A.M., Britt informed the dispatcher the street address for L & R. Minutes

---

[1]Liberda contends that he must elevate his leg in order to alleviate the continuing pain. Consequently, he is unable to conduct recruiting seminars because he cannot rest his leg. Further, Liberda contends that the incident caused him embarrassment.

after Mouille was placed in custody, Lieutenant Hopper arrived at L & R. Officer Hopper interviewed each of the witnesses. By 11:56 A.M., Britt reported that he was en route to pol ice headquarters with Mouille.

## II. PROCEDURE

Liberda, along with Mouille, Grace Rollins, and Laurie Rollins, filed a Section 1983 action against the defendants alleging a violation of their fourth amendment rights. The case was tried before a jury. At the close of plaintiffs' case, each defendant moved for a directed verdict. The district court dismissed the claims by Liberda, Grace Rollins, and Laurie Rollins. Further, the district court directed a verdict for Faesler against all claims by Mouille, but denied the directed verdict motions by Britt, Jackley, and the City of Live Oak.

Liberda, Grace Rollins, and Laurie Rollins appealed from the adverse determination by the district court. Subsequently, a panel of this court affirmed the directed verdicts against Grace Rollins and Laurie Rollins, but reversed the verdict against Liberda, and remanded for a new trial. *See Mouille v. City of Live Oak,* 918 F.2d 548, 550 (5th Cir.1990). On remand, the jury, by special verdict, found that Britt had not used excessive force against Liberda, and the district court entered judgment for the defendants. Liberda appeals.

## III. DISCUSSION

*A. Qualified Immunity—Britt*

Britt answers Liberda's Section 1983 claims with the affirmative defense of qualified immunity. Qualified immunity determinations implicate a multi-faceted framework. This case represents a procedurally unique setting in which to discuss qualified immunity. Qualified immunity is normally raised prior to trial at the summary judgment stage. Indeed, the thrust underlying the affirmative defense of qualified immunity is to allow public officials to avoid timely and exhaustive litigation. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 954 F.2d 1054, 1057 (5th Cir.1992).

A prior panel of our court has already decided that Britt was not entitled to qualified immunity following a directed verdict in favor of defendants. *See Mouille,* 918 F.2d at 551. The *Mouille* panel

remanded Liberda's claims to the district court where he commenced a second trial—this time around the defendants were able to introduce their own evidence. Crucial evidence that established Britt was not entitled to qualified immunity in the first trial was either: (i) ineffectively presented by Liberda; or (ii) sufficiently eviscerated by the defendants during the second trial.

In *Mouille,* the plaintiffs had proven that Britt did not enter the L & R offices until thirty minutes after Mouille had parked his car.[2] The current record is bereft of any evidence upon which to conclude that thirty minutes elapsed from the time Mouille pulled into the parking lot until the time Britt burst through the door.[3] Therefore, the life blood of the *Mouille* panel's conclusion: that Officer Britt's actions were "bizarre and shockingly unreasonable," is emasculated.[4] Significantly, the current record establishes that eight minutes elapsed from Britt's last radio contact during the chase on I–35 until his next report when Britt informed the dispatcher that Mouille was in custody. The foregoing merely establishes that we are not bound by the *Mouille* decision.

Initially, plaintiff must allege a violation of a clearly established constitutional right. *See Siegert v. Gilley,* —— U.S. ——, ——, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277, 287 (1991). Liberda alleges that Officer Britt used excessive force against him during the course of Mouille's arrest. Currently, allegations of excessive use of force implicate the fourth amendment's guarantee of freedom from unreasonable "seizures." *See Graham v. Connor,* 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989).[5] Liberda's allegations fall under the broad definition of

---

[2]Presumably, the plaintiffs were able to establish the thirty minute interval through their own testimony, and this testimony stood unrebutted on appeal because the directed verdict barred the defendants from introducing their evidence.

[3]In the second trial Britt testified that he immediately pursued Mouille into L & R associates. Further, his testimony was corroborated by the police log. Moreover, Britt's radio broadcasts were monitored and corroborated by Lieutenant Hopper and the radio dispatcher.

[4]The *Mouille* panel concluded that it was bound to construe the record most favorably to Liberda because the case was appealed following a directed verdict. *See Mouille,* 918 F.2d at 553. Favorable conclusions in the first appeal included not only the primary determination of the thirty minute interval, but secondary inferences such as: (i) given the time lag, Britt could have called for backup; and (ii) there was no exigency or excitement to justify such disruptive pursuit.

[5]The Supreme Court stated in *Graham* that excessive use of force claims fall under the fourth amendment's guarantee of the right "to be secure [from] ... unreasonable ... seizures" of the person. *See Graham,* 490 U.S. at 394, 109 S.Ct. at 1871. Further, Chief Justice Rehnquist

"seizure" for fourth amendment purposes.[6]  However, prior to *Graham,* the law in this Circuit clearly held that excessive use of force claims were governed by the substantive due process clause in the fourteenth amendment.  *See Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.Unit A Jan. 1981).

Categorization of the precise constitutional rubric violated by excessive force has been subject to the sands of temporality.  Be that as it may, the underlying standard throughout has always been that qualified immunity operates as a cloaking device from personal liability for police officers who act in an objectively reasonable manner.  *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).  Under *Anderson* and its progeny, the reasonableness of action taken must be assessed in light of the "clearly established" law in effect at the time.  *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038; *see also Jackson v. Beaumont Police Dep't,* 958 F.2d 616, 620 (5th Cir.1992); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1184 (5th Cir.1990).

Approached from a different vantage point:  police officers are free to exercise their discretion as long as they do not trample over clearly established legal rights, *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038.  The rationale behind the "clearly established law" requirement rests on the notion that police action should not be subject to retroactive application of newly created legal standards.  *See Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Furthermore, the approach is objective in nature so that all officials will conduct their activities subject to the same standards.  Moreover, where clear legal rights are not involved it is better to have a policy that encourages action, without the fear of Monday morning quarterbacking.  Therefore, even if we conclude, with the benefit of hindsight, that Britt did violate Liberda's

---

expressly disavowed an approach to excessive force claims under the substantive due process clause of the fourteenth amendment.  *See id.* at 395, 109 S.Ct. at 1871.

[6]In *Graham,* the Supreme Court defined "seizure" under the fourth amendment as a "means of physical force or show of authority, ... in some way restrain[ing] the liberty of a citizen." *See Graham,* 490 U.S. at 395, 109 S.Ct. at 1871 (*citing Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)).  It further required that "*all claims that officers have used excessive force* ... in the course of an arrest ... should be analyzed under the fourth amendment and its "reasonableness' standard, rather than under a "substantive due process' approach." *Id.* (emphasis added).

constitutional rights, but we also conclude that a reasonable officer placed in Britt's shoes would have acted similarly—then Britt is entitled to the protective shroud of qualified immunity. *See Duckett v. City of Cedar Park,* 950 F.2d 272, 280 (5th Cir.1992).

A threshold inquiry into what is "objectively reasonable" must establish the law in effect on January 9, 1987. Applying the "clearly established law" requirement to the present case points us to *Shillingford.* Prior to the Supreme Court's decision in *Graham,* the controlling legal precedent in this Circuit held that the substantive due process clause of the fourteenth amendment governed excessive use of force claims. *See Simpson v. Hines,* 903 F.2d 400, 403 (5th Cir.1990) (*citing Shillingford,* 634 F.2d at 265). *Shillingford* stated:

> If the state officer's action caused severe injury, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

*Id.*

The *Shillingford* decision sets forth a conjunctive tripartite test to determine the reasonableness of an officer's actions. The standard has coalesced and can be simply stated: (i) did the action cause severe injury; (ii) was the action grossly disproportionate to the need for action under the circumstances; and (iii) did the officer act so maliciously that it would shock the conscience. *See id.* Therefore, if any of the three elements of the test are missing, then the plaintiff has not suffered a violation of constitutional magnitude. This test represents the clearly established law, which guided law enforcement as of January 9, 1987.

Applying the standard to the case at hand, we must first place ourselves, as reasonable officers, in Britt's shoes. Next, we have to account for Britt's sudden and unexpected predicament—trying to discount the benefit of hindsight. Certainly, we do not want to hold Britt to standards higher than what reasonable peers of his would have done under the same circumstances.

The most relevant prong in the three part inquiry for our purposes is number two: whether Britt's actions were grossly disproportionate to the need for action. Britt acted reasonably when he chased Mouille into the L & R offices because he was trying to evade arrest. Perhaps Britt may have opened the office door with less vigor. However, none of the people inside that office were entitled

to interfere with Britt's arrest. Indeed, citizens have no right to intervene in lawful police business. Further, Liberda's actions were undoubtedly inappropriate. We do not wish to countenance like behavior in the future.

When Britt saw Liberda approaching him menacingly—he did not know what Liberda's intentions were. If he were to passively await the outcome he may have been injured or even worse. The constitution does not empower private citizens to imperviously interfere with police business. The jury found that Britt did not use excessive force and we too agree that Britt acted reasonably when he attempted to quell a volatile situation under rapidly evolving and unpredictable circumstances. Therefore, Britt's actions were not grossly disproportionate to the need for action.

Secondly, we focus on the third prong of *Shillingford* and consider whether Britt acted so maliciously that it shocks the conscience. Objectively, we must analyze Britt's actions, and consider whether a reasonable officer would use a firearm to protect himself when approached by unknown individuals during the course of an arrest. We conclude that Officer Britt's actions were objectively reasonable and not excessive, given the circumstances. Indeed, they do not shock the conscience.

The severe injury prong of *Shillingford* need not be addressed. In fact, the jury below was charged on the basis of significant injury. To be sure, the law on excessive force claims, as it currently stands in this Circuit, requires that plaintiffs must prove significant injury. *See Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989) (en banc) (per curiam). The *Johnson* holding has been called into doubt by *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 997, 117 L.Ed.2d 156 (1992) (excessive force claim tenable in eighth amendment context even without significant injury).[7] We expressly decline to decide whether *Johnson* 's vitality has been impaired by *Hudson.* Incidentally, anything that we say regarding *Johnson* would be dicta for two reasons: (i) because we find that Britt is entitled to qualified immunity under *Shillingford* 's second and third prongs, we need not address the first prong; and (2) Britt is not bound by legal developments, which occurred after

---

[7]Two recent Fifth Circuit cases have recognized the tension between *Johnson* and *Hudson. See King v. Chide,* 974 F.2d 653, 657 (5th Cir.1992); *Knight v. Caldwell,* 970 F.2d 1430, 1432 (5th Cir.1992). However, both cases declined to decide whether *Hudson* in fact impugned *Johnson.*

1987.

## B. *Jackley and Faesler*

Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. *See Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir.1985) (per curiam). Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. *See Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987); *see also Grandstaff v. City of Borger,* 767 F.2d 161, 169–70 (5th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). We find a dearth of evidence in the record, and conclude that Liberda has failed to substantiate allegations as to any unconstitutional policies.

## C. *City of Live Oak*

Municipalities can be held vicariously liable for the actions of their employees. *See City of Canton v. Harris,* 489 U.S. 378, 395, 109 S.Ct. 1197, 1208, 103 L.Ed.2d 412 (1989). Inadequate police training may serve as a predicate for Section 1983 liability only where it amounts to deliberate indifference to constitutional rights. *Id.* at 379, 109 S.Ct. at 1199. Again, Liberda has failed to make out a case against the municipality.

## D. *Failure to submit Liberda's interrogatories*

Because we find that Britt is entitled to qualified immunity and we find no evidence against Jackley, Faesler, and the City of Live Oak—we find both the interrogatories that were submitted and the interrogatories that were excluded to be superfluous. Any error with regard to interrogatories is entirely subsumed within our finding of qualified immunity.

## E. *District court's failure to submit a letter from Live Oak's City Manager Faesler to Police Chief Jackley.*

Liberda contends that the trial court erred in excluding a letter written by Faesler, dated April 13, 1988, which proposed that Jackley resign from his job as police chief. Liberda contends that the letter was relevant to proving a causal link between municipal policy and Britt's excessive use of

force.  The letter alleges that Jackley:  (i) mishandled evidence;  (ii) improperly seized pornography for personal use;  (iii) engaged in voyeuristic behavior with a cadaver;  (iv) "mooned" subordinate officers;  (v) pulled down an officer's pants during a party;  (vi) trespassed on private property;  (vii) improperly seized and mishandled narcotics;  and (viii) shot at animals.  While the letter does set forth exceedingly embarrassing allegations about Jackley, it does not prove that Live Oak police officers received inadequat e training.  We find that the exclusion of this evidence was well within the discretion of the trial court.

## IV. CONCLUSION

Officer Britt is entitled to qualified immunity primarily because he did not use disproportionate force under the circumstances.  Therefore, although Britt was not entitled to qualified immunity in *Mouille* he was able to refute the unchallenged allegations of Liberda the second time around.  We hold that Britt proved his actions were immune.  Liberda failed to make out a case against Faesler, Jackley, and the City of Live Oak.  Consequently , the jury instructions drop out of the picture altogether because our finding of qualified immunity renders them meaningless.  Further, the exclusion of the letter was entirely within the discretion of the trial court.  AFFIRMED.