GRAVES, Circuit Judge,
dissenting, in part, as to Issue II:
The separate majority essentially eliminates the applicability of the single incident exception to claims for failure to train on the use of deadly force and reverses the denial of summary judgment to Chief Krahn. I disagree. Because I would affirm the district court’s denial of summary judgment and dismiss Krahn’s appeal, I respectfully dissent only as to Issue II.
This court has said that “[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiffs injury.” Mouille v. City of Live Oak, Texas, 977 F.2d 924, 929 (5th Cir.1992).
Krahn asserts that the City’s police officer training program exceeds constitutional standards, that he was not deliberately indifferent, and that he was not objectively unreasonable.[1] The Hobarts assert that they have presented evidence that Estrada’s excessive force actions were entirely consistent with SPD policy and that Krahn was deliberately indifferent in failing to train Estrada on the use of deadly force.
In a failure to train case, the Hobarts can prove deliberate indifference either by showing a pattern of tortious conduct providing notice of inadequate training or by using, as is applicable here, the single incident exception. See Board of County Comm’rs of Bryan Cnty. v. Brown, 520 U.S. 397, 405-408, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Under the single incident exception, a single violation of rights may be sufficient to prove deliberate indifference. Id. at 408-409, 117 S.Ct. 1382.
The majority misapprehends the holding in Valle v. City of Houston, 613 F.3d 536 (5th Cir.2010), as indicating that “typically, application of the single incidence exception requires evidence of the proclivities of the particular officer involved in the excessive use of force.” Not only is there no such requirement under Valle, but such a requirement would defeat the very notion *360 of a single violation.[2] Contrary to the majority’s holding here, Valle actually says that, although such evidence may be probative in determining a highly predictable consequence for municipal liability in a situation involving sending a particular officer into a particular situation, there is no requirement of any such evidence. Id. at 549. See also Brown v. Bryan Cnty., Okla., 219 F.3d 450, 459 (5th Cir.2000) (“[Liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations.”). Moreover, the United States Supreme Court has made it clear that, “once a municipal policy is established, ‘it requires only one application ... to satisfy fully Monell’s [3] requirement that a municipal corporation be held liable only for constitutional violations resulting from the municipality’s official policy.’ ” Pembaur v. City of Cincinnati, 475 U.S. 469, 478 n. 6, 106 S.Ct. 1292, 89 L.Ed.2d 452 (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 822, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Thus, any requirement of evidence showing a history of violations pursuant to the policy contradicts controlling precedent.
More importantly, while the majority is correct that the single incident exception is narrow, Valle does not in any way suggest that death is not a highly predictable consequence of failure to train on the use of deadly force. Further, in this case, the failure to train on the use of deadly force would clearly represent the moving force behind the constitutional violation stemming from unreasonable use of deadly force. Moreover, this is consistent with Supreme Court precedent, which clearly supports the conclusion that Krahn was deliberately indifferent. See City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989):
[Krahn] has armed [his] officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights.
Id. at 390 n. 10, 109 S.Ct. 1197 (internal marks and citation omitted). See also Broion, 219 F.3d at 459 (“Thus, when the city arms its officers to carry out this task, there is thus the obvious need to train officers in the constitutional limitations on the use of deadly force. This need for training is so obvious that the failure to train is deliberate indifference to constitutional rights.”).
The majority’s use of language indicating that the only instance in which we have found a single incident sufficient included “an abundance of evidence about the proclivities of the particular officer involved in the excessive use of force” is of no import. While this court did include such an observation in Valle, 613 F.3d at 549, the majority’s use of it here is a misapprehension of what occurred in Brown. In Brown, although this court did discuss the officer’s “personal record of recklessness and questionable judgment,” we clearly concluded, as set out above, that liability can attach for a single incident even when there is no such pattern. Brown, 219 F.3d at 463. *361 Furthermore, even if evidence about the proclivities of the officer was required, evidence of such exists here.[4]
During his deposition, Estrada was repeatedly unable to provide the appropriate policy or procedure, specifically with regard to the Use of Force Continuum and/or dealing with mentally ill persons. Estrada also did not know whether he had ever had any field training dealing with mentally ill persons. Estrada testified that it was appropriate to use deadly force wherever he deemed it necessary. Further, Estrada testified that none of his supervisors had ever indicated that he used excessive force in the shooting of Aaron Hobart, he was never reprimanded, and nobody ever discussed the incident with him — other than to have him see a doctor — or reviewed the levels of force and the applicability for the use of each one. However, Estrada did receive CIT training after the shooting.[5] Estrada was also unable to explain the meaning of things like “high-risk affair” and “exigent circumstances.” Estrada testified that it was the policy and practice of the City of Stafford for him to enter the scene by himself. He also testified that mentally ill people or drug addicts who are hallucinating are not treated any differently than regular people who are being arrested.
In his deposition, Krahn testified that he has had the authority to adopt departmental policies and procedures for more than ten years. These policies are contained in the “General Orders” or written guidelines of the department. The SPD has a General Order regarding the handling of mentally ill persons, but, as the district court found, it is not clear whether this is a final version of that order because it is not the same version as found in the then-applicable General Orders.
Krahn was responsible for ensuring his officers received proper training. Krahn was also the policymaker responsible for promulgating the General Orders of the SPD. The record indicates that an internal investigation found that Estrada’s conduct in using deadly force was within the guidelines of the SPD. Estrada said that he was trained to shoot his gun if he began seeing “stars” or “black.” Sergeant Dustin Claborn testified that officers, if going unconscious, are indeed trained to fire until the threat is over, regardless of their surroundings and regardless of whether the officer reasonably believes his life is in danger. Claborn also testified that Estrada’s actions complied with department pol *362 icy. Krahn likewise testified that Estrada complied with department policy, which was promulgated by Krahn. Estrada was repeatedly unable to provide the appropriate policy or procedure with regard to the use of force. As discussed in Part I, Estrada has failed to establish that his use of deadly force was reasonable.
With regard to Krahn, the district court found summary judgment inappropriate based on genuine issues of material fact. The district court further found that Krahn was not entitled to qualified immunity because the plaintiffs had provided evidence of a factual scenario under which no reasonable officer in “Krahn’s circumstances would have believed it to be lawful to fail to train police officers on the appropriate use of force.” Further, “[i]t would be illogical to suggest that the deliberately indifferent failure to train police officers about appropriate levels of force was not clearly established at the same time, and the Court concludes that it was.” The district court also found that a question of fact remained as to whether officers were properly trained on the use of force. In light of these facts, the court opined that “a jury could find that the need to train SPD officers in the constitutional limitations on the use of force, and the use of deadly force in particular, was ‘so obvious’ that failure to do so could properly be characterized as ‘deliberate indifference’ to constitutional rights.” The district court’s thorough and well-reasoned orders are entirely supported by the record. The separate majority acknowledges that a factual question exists regarding the sufficiency of the training of SPD officers with regard to the appropriate use of force, but then finds the failure to train does not amount to deliberate indifference. I disagree.
The majority concedes that the Hobarts have cited evidence of a “pattern of failing to train.” The majority then concludes that the Hobarts put on no evidence explaining the application of the single incident exception to their claim for failure to train on the use of deadly force. However, the Hobarts clearly did offer such evidence. And the district court clearly applied the single incident exception, finding that the use of deadly force “was so obvious that failure to do so could properly be characterized as deliberate indifference.” (Internal marks omitted) (citing City of Canton, 489 U.S. at 890 n. 10, 109 S.Ct. 1197). As it is undeniable that the use of deadly force is one of the “recurring situations presenting an obvious potential for such a violation;” I would conclude that the district court is correct. Bryan County, 520 U.S. at 409, 117 S.Ct. 1382 (citing Canton, 489 U.S. at 390, 109 S.Ct. 1197).
Both Estrada and Krahn assert that Estrada’s use of deadly force was reasonable pursuant to the training, or lack thereof, by Krahn and that he was following the policy promulgated by Krahn. Estrada has failed to establish that his use of deadly force was reasonable, and, thus, he is not entitled to summary judgment on the basis of qualified immunity. It clearly follows that Krahn would obviously be deliberately indifferent in not training Estrada in the appropriate use of deadly force. See Bryan County, 520 U.S. at 409-110, 117 S.Ct. 1382 (the “high degree of predictability” that failure to train on the use of deadly force would violate citizens’ rights supports an inference of causation— that the “indifference led directly to the very consequence that was so predictable.”).
As Estrada has failed to establish that his use of deadly force was reasonable, the evidence that Estrada was in compliance with department policy promulgated by Krahn is sufficient to affirm the district court’s denial of summary judgment on this issue. Moreover, because Krahn’s *363 failure to train on the use of deadly force establishes deliberate indifference, he is not entitled to summary judgment on the basis of qualified immunity. However, based on the record in its entirety, there are several factual disputes. Again, “if a factual dispute must be resolved to make the qualified immunity determination, that fact issue is material and we lack jurisdiction over the appeal.” Manis, 585 F.3d at 843. Thus, this court also lacks jurisdiction over Krahn’s appeal and I would dismiss.

. The majority concedes that the only issue remaining is whether Krahn was deliberately indifferent.

. Likewise, there is no requirement that the district court engage in any analysis of such evidence in assessing a claim for failure to train on the use of deadly force. I also note that the use of force is a recurring police function with highly predictable consequences.

. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

. Estrada's training record indicates that, during field training in October, November and December of 2007, he was repeatedly rated below the minimum acceptable rating in common sense and judgment, officer safety, department policies and procedures, and communications. He was also rated below the minimum acceptable rating for control of conflict at least once. There was no evidence presented of any subsequent evaluations or training.

. The Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) mandates that officers complete CIT training. The parties dispute whether Estrada completed CIT training prior to the shooting of Aaron Hobart. Krahn testified that TCLEOSE began mandating CIT training in 2005 or 2006 and that all officers were required to have completed mandated training by August 2008. Krahn was responsible for the CIT training. Any officer who did not receive CIT training in their original program was required to take a special training program. Estrada did not take the special training, but testified that he received CIT training through the basic police academy. However, Estrada’s training record clearly states that he completed zero hours of CIT training. Thus, there is a question of whether Estrada received any CIT training prior to Aaron's shooting. There is also a question as to the actual order in place at the time regarding dealing with mentally ill persons.