Antholene CLARK, Individually and on Behalf of All Wrongful Death Beneficiaries of Donald Strong, Plaintiffs,

v.

Malcolm McMILLIN, Individually and As Sheriff of Hinds County, Mississippi; Hinds County, Mississippi; John Doe; and Western Surety Company, Defendants.

No. 3:95CV508LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 28, 1996.

**790**

Jane E. Tucker, James Homer Best, Jackson, MS, for Plaintiffs.

Robert H. Pedersen, Watkins & Eager, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Hinds County and Hinds County Sheriff Malcolm McMillin for summary judgment, and on the separate motion of Western Surety Company for summary judgment. Plaintiff Antholene Clark has responded in opposition to both motions. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motions should be granted as set forth herein.

The basic facts giving rise to this cause are undisputed. On October 8, 1994, while housed as a pretrial detainee in the Hinds County Detention Center (HCDC), Donald Strong, plaintiff's brother, was assaulted and killed by a fellow inmate, Jason Fields. The two had been placed together in a cell, as both were on suicide watch. Plaintiff filed this action against the sheriff in his individual and official capacities, and against Hinds County, alleging federal and state law claims in connection with her brother's death. In particular, she sued under 42 U.S.C. § 1983, alleging that these defendants violated the Fourth, Eighth and Fourteenth Amendments, and asserted a state law claim for wrongful death based on defendants' alleged negligence and/or intentional conduct. She alleged that the defendants had no policy to safeguard inmates from violent attacks from other inmates; failed to place Jason Fields in a unit for violent felons; ignored complaints or reports of Jason Fields' violent propensity; failed to properly screen inmates for violent propensities; failed or refused to provide adequate medical care to Donald Strong after Fields' assault; failed to control the assault; failed to properly investigate assaults by one prisoner against another and to designate cells for violent prisoners; and committed other negligent or intentional acts which caused Donald Strong's death. The County and sheriff seek summary judgment on all of plaintiff's federal claims and request that the court either grant summary judgment on plaintiff's state law claims as well, or alternatively, remand the state law claims in accordance with 28 U.S.C. § 1367.

The court first considers plaintiff's individual capacity claim against the sheriff. Plaintiff acknowledges that Sheriff McMillin is not subject to § 1983 liability for acts or omissions of his subordinates on the basis of respondeat superior. *See Mouille v. City of Live Oak,* 977 F.2d 924, 929 (5th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). Rather, to prevail on her claim against the sheriff in his individual capacity, she must show that he affirmatively participated in acts that resulted in the alleged constitutional deprivation, or that he implemented unconstitutional policies that causally resulted in Donald Strong's death. *Id.*

▪ While plaintiff has asserted claims under the Fourth, Eighth and Fourteenth Amendments, the Fifth Circuit, in a recent opinion on this subject, held that "[t]he constitutional rights of a pretrial detainee ... flow from both the procedural and substantive due process guarantees of the Fourteenth Amendments," and not from the Fourth or Eighth Amendment. *See Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir.1996). The *Hare* court further clarified that the proper legal measure of a pretrial detainee's failure-to-protect claim is not negligence or even gross negligence, but rather is the

"deliberate indifference" standard long applied to Eighth Amendment claims by convicted inmates. *Id.* at 643–45. "When ... a pretrial detainee's claim of failure to provide ... protection from violence does not challenge a condition, practice, rule, or restriction, but rather attacks the episodic acts of omissions of a state jail official, the question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645. The court concluded that "the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted of failed to act with deliberate indifference to the detainee's needs." *Hare,* 74 F.3d at 647–48. The court then held, in keeping with the Supreme Court's decision in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct.1970, 128 L.Ed.2d 811 (1994), that a "subjective definition of deliberate indifference provides the appropriate standard for measuring the duty owed to pretrial detainees under the Due Process Clause." *Hare,* 74 F.3d at 648. In other words, " 'a prison official may be held liable ... only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " *Id.* at 648 (quoting *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1984). In summary, then, the court in *Hare* held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

*Id.* at 650.

■ Here, plaintiff maintains that defendants, including the sheriff, knew that Jason Fields posed a substantial risk of serious harm to other inmates, including Donald Strong, and that the sheriff, as well as other Hinds County officials, was deliberately indifferent to that risk in that they first failed to segregate Fields from other prisoners, including their decedent, and then, after placing Fields in the same cell as Donald Strong, failed to adequately supervise Fields to insure that he did not harm Strong.

Plaintiff's contention that Fields presented a substantial risk of harm to her brother is premised primarily on a number of incidents involving Fields which predated the October 8, 1994 attack on Donald Strong. Specifically, she points to jail records which she contends disclose the following:

1. On May 26, 1994, Jason Fields ran into a wall;

2. On June 2, 1994, Jason Fields was involved in a fight in his cell;

3. On August 9, 1994, Jason Fields had a fight in his cell;

4. On August 23, 1994, Jason Fields received disciplinary report for being in an unauthorized area;

5. On September 18, 1994, Fields threatened to "stick" another inmate;

6. On September 20, 1994, Fields was involved in a fight with another inmate in which he attempted to strike the other inmate in the head with a chair;

7. On September 30, 1994, Fields cut his wrists with a piece of plastic;

8. On October 7, 1994, Fields was beating on a table; and

9. On October 8, 1994, at 12:30 a.m., Fields was beating on and broke a window.

As additional evidence of Fields' alleged violent propensities, plaintiff points out that on August 24, 1994, Ophelia Kelly, a mental health therapist employed by the Jackson Mental Health Center, noted that during a screening evaluation that Fields had "[said] he does have suicidal and homicidal ideations." Finally, plaintiff maintains that yet another indication that Fields was a violent and dangerous inmate stemmed from the fact that at the time of the assault on Donald Strong, he was being held at the HCDC

awaiting trial on charges of capital murder, armed robbery and aggravated assault.[1]

Defendants deny that evidence of Fields' conduct in the HCDC in the months preceding the assault on Donald Strong, as reflected by the incidents recounted above, creates an issue of fact on whether Fields posed a risk to others. However, in the court's opinion, a jury viewing this evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff could reasonably find that, in fact, Fields did present a substantial risk of serious harm to other inmates.[2] But it is not enough that plaintiff might prove there existed a risk of harm; rather, to avoid summary judgment, she must present evidence to show that Sheriff McMillin was deliberately indifferent to that risk. This, she has failed to do.

Without knowledge of the risk, the sheriff could not have been deliberately indifferent within the contemplation of *Hare* and *Farmer*. *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not ... cannot under our cases be condemned as the infliction of punishment."); *Hare*, 74 F.3d at 649 (punishment is inflicted only when a prison official is indifferent to a risk of which he was aware). In an affidavit

filed in support of his motion, Sheriff McMillin has stated that while he is statutorily charged with the responsibility for the operation of Hinds County's jails, *see* Miss.Code Ann. § 19–25–69 (1972), he has appointed others to handle the day-to-day operation of the jails, who report to him. Sheriff McMillin chose Major Arty Girod to supervise all of Hinds County's detention facilities, and Lieutenant Doug Jones was placed in charge of the operation of the HCDC. Sheriff McMillin declares further in his affidavit that he did not directly supervise inmates Donald Strong or Jason Fields, and that prior to the incident at issue in this case, he did not read Jason Fields' file and did not receive, either directly or indirectly, any information "which would indicate to anyone that inmate Jason Fields posed a threat to the physical safety and security of inmate Donald Strong." Despite McMillin's affidavit, plaintiff asserts that "the documented evidence of Jason Fields' violent outbursts in the past gave Hinds County officials, more particularly Malcolm McMillin and officials working at the Hinds County Detention Center, knowledge of a substantial risk of serious harm at the hands of Jason Fields."

In *Farmer*, the Supreme Court held that if the prisoner presents evidence showing that a substantial risk of inmate attacks

---

1. In addition to the instances cited in the text, plaintiff observes that on "April 12, 1995, Fields threatened officers while on lock-down status, i.e., he threatened to 'stick an officer,' and it was also noted that Fields exhibited uncontrollable rage after a physical confrontation with an officer." Moreover, she cites an April 11, 1995 report of David Powers, a licensed clinical psychologist, wherein Dr. Powers stated:
Jason was involved with several altercations with staff and other inmates recently.... Jason in my opinion, has impulse control problems. Past behavior is the best predictor of future behavior. Jason has in fact killed some people with what appears to be little provocation. Jason's likelihood of violence increases as he believes he establishes a mental problem. A mental diagnosis works as an excuse for him to become violent. He is dangerous in my opinion. This observation has certainly been corroborated by past violence.
This evidence, though, relates to an incident occurring, and observations made some six months after the assault on Donald Strong, and has no relevance on the question whether any defendant knew in October 1984 that Fields posed a substantial risk of danger to other inmates.

2. Plaintiff's other evidence—Ophelia Kelly's notation in Fields' file and the nature of the crimes charged against him—is not especially probative. As defendants point out, Kelly, who saw Fields ten times during his incarceration at HCDC, has provided an affidavit stating that "at no time during [her] observation and evaluation of Jason Fields did he ever exhibit any behavior that led [her] to believe that he was actually psychotic or that he was in any way a danger to himself or any other person." She further explained that she noted his expression of homicidal ideations because she was required to do so by professional standards, even though she did not at any time believe that Fields was either homicidal or suicidal.

Further, the mere fact that Fields was charged with crimes of violence (capital murder, armed robbery and aggravated assault) would not have warranted his segregation from others who were similarly charged with crimes involving violence, such as plaintiff's decedent (who was himself charged with aggravated assault).

was longstanding, "pervasive, well-documented, or expressly noted by the officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Farmer,* 511 U.S. at ——, 114 S.Ct. at 1981–82. Rationally, one would have to assume that some Hinds County official who worked at the HCDC was aware of Fields' activities at the jail, and of the record of incidents involving Fields. That is, the mere existence of the records would surely support an inference that *someone* had knowledge of Fields' behavior. But plaintiff's argument and evidence (or lack thereof) wholly fails to account for McMillin's affidavit in which he specifically denies that *he* was ever made aware of Fields' conduct while incarcerated. To reiterate, Sheriff McMillin cannot be held individually liable under § 1983 for Donald Strong's death unless plaintiff proves that Sheriff McMillin—and not merely his subordinates—had actual knowledge of a substantial risk of serious harm to which he was deliberately indifferent; constructive knowledge will not suffice.

Since plaintiff has presented no evidence to refute McMillin's sworn statement that he lacked such knowledge, i.e., to create a genuine issue of material fact on the issue of Sheriff McMillin's knowledge or lack of knowledge, then in order to succeed on her claim against the sheriff, she must show that he implemented unconstitutional policies which causally resulted in the death of Donald Strong. *Mouille,* 977 F.2d at 929; *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (requiring proof that official created "a policy or custom under which unconstitutional practices occur or allow[ed] such [a] policy or custom to continue"). In her complaint and memorandum opposing summary judgment, plaintiff has not specifically alleged or identified a particular "policy" or "custom" which she contends caused her

brother's death, though she alludes to a number of failings which she insinuates occurred as a result of some policy or custom of Sheriff McMillin. For example, she charged in her complaint that defendants failed to properly screen inmates for violent propensities and failed to designate cells for violent prisoners. However, in the face of defendant's motion, plaintiff has offered no proof to substantiate these allegations.

In their summary judgment materials, defendants presented proof of several policies designed to address problems posed by violent and suicidal inmates, including (1) incarcerating convicted prisoners separate from pretrial detainees when possible; (2) incarcerating inmates with suicidal tendencies separately from other inmates under special "suicide proof" conditions and in "suicide-proof" cells and making fifteen-minute cell checks; (3) providing mental health specialists to the inmates housed on suicide watch; (4) retaining on staff a registered nurse and having on retainer a clinical psychologist; and (5) removing from the population and isolating inmates who cause serious disruptions. Plaintiff has offered no contrary evidence. Thus, while plaintiff contends that Hinds County officials, including the sheriff, failed to segregate a known violent inmate, Jason Fields, from other prisoners, including Donald Strong, she has not shown, or attempted to show that this failure was pursuant to any policy of the sheriff or that this was other than an isolated occurrence.

■ Plaintiff does argue that defendants' policy of checking the suicide cell every fifteen minutes was constitutionally deficient since a period of fifteen minutes is more than adequate time for a prisoner to commit suicide, or for one prisoner to kill another. The court concludes as a matter of law that defendants' policy in this regard did not amount to "deliberate indifference," and hence was not unconstitutional. *See Rhyne v. Henderson County,* 973 F.2d 386, 393 (5th Cir.1992) (no jury issue presented where no evidence was presented to show that policy of checking on suicide-prone inmates every ten minutes was obviously inadequate).[3]

---

**3.** Plaintiff states in her memorandum that if the court should find that defendants' policy of fif-

teen-minute checks does not amount to deliberate indifference, then she "would show the Court

■ That brings the court to plaintiff's claim against defendant Hinds County and her official capacity claim against the sheriff.[4] To succeed on her claim against Hinds County, and hence against Sheriff McMillin in his official capacity, plaintiff is required to prove that the alleged deprivation resulted from "(1) an action taken or policy made by an official responsible for making final policy in that area of the [County's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994); *Doe v. Rains County Indep. School Dist.,* 66 F.3d 1402, 1409 (5th Cir. 1995). Since Sheriff McMillin was the county official responsible for making final policy for the jail, *see Huddleston v. Shirley,* 787 F.Supp. 109, 112 (1992) (county subject to liability for sheriff's failure to release inmate for work release program), and *Brooks v. George County,* 77 F.3d 834 (1996), then Hinds County would be liable if Sheriff McMillin's actions or policies amounted to deliberate indifference to a substantial risk of serious harm which resulted in Donald Strong's death. However, the court has already concluded that plaintiff's claim against the sheriff fails both for lack of proof that he was deliberately indifferent to a substantial risk of serious harm to plaintiff's decedent, and for lack of proof that Donald Strong's death resulted from any policy or custom of the sheriff. Consequently, there exists no basis for imposing liability against the County or the sheriff in his official capacity.

■ Based on the foregoing, defendants Hinds County and Sheriff McMillin, in his individual and official capacities, are entitled to summary judgment as to plaintiff's federal claims against them. However, plaintiff has also asserted state law claims against them and has included in her complaint a "John Doe" defendant.

This case was filed nine months ago, in June 1995, and during the pendency of the case, discovery has commenced and been concluded. Yet to date—and certainly not within 120 days of filing her complaint—plaintiff has not moved to amend her complaint to identify and name the John Doe defendant. Accordingly, dismissal of the John Doe defendant is in order. *See* Fed. R.Civ.Proc. 4(m) and 15(c); *Hinton v. Teamsters Local Union No. 891,* 818 F.Supp. 939, 940 n. 1 (N.D.Miss.1993); *Carmona Pacheco v. Betancourt Y Lebron,* 820 F.Supp. 45, 46 (D.P.R.1993); *DeHoyos v. John Mohr & Sons,* 629 F.Supp. 69, 83–84 (N.D.Ind.1984).

■ Defendant Hinds County and Sheriff McMillin ask that the court, should it find summary judgment to be appropriate on the federal claims, remand the plaintiff's state law claims in accordance with 28 U.S.C. § 1367. The court's original jurisdiction over this cause is premised on plaintiff's federal claims; her state law claims fall within the court's supplemental jurisdiction. Section 1367 provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction." In its discretion, the court declines to exercise jurisdiction over the remaining state law claims and will remand those claims to the Hinds County Circuit Court, First Judicial District, from which this case was removed by defendants.

Plaintiff has sued defendant Western Surety Company on the bond which it issued on behalf of Sheriff McMillin. Western Surety contends that it is entitled to summary judgment because Sheriff McMillin is entitled to summary judgment. In his response to this defendant's motion, plaintiff denied that Sheriff McMillin's motion for summary judgment was well taken but conceded that "if Malcolm E. McMillin, in his official capacity,

---

that the policy was violated in the instant case." In other words, she would show that "Donald Strong and Jason Fields were left unsupervised for a period of longer than fifteen (15) minutes." Plaintiff has offered no such evidence that the policy of fifteen-minute checks was violated in this case, but even were such evidence present, a subordinate's violation of the sheriff's policy would not provide a basis for imposing liability against the sheriff.

4. In their motion, defendants assert that this court should dismiss the official capacity claim against the sheriff since it is merely duplicative of her claim against the County. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). While that is true, this ultimately is a moot issue since the court concludes that there is no basis upon which plaintiff can prevail against the County or against the sheriff in his official capacity.

is granted Summary Judgment, then Western Surety Company should also be granted Summary Judgment." Thus, to the same extent that this court has granted summary judgment for Sheriff McMillin, the court finds that summary judgment for Western Surety is proper. However, the court has not undertaken to rule on the plaintiff's state law claims against Sheriff McMillin and has elected, instead, to remand those claims to state court. Therefore, plaintiff's claim against Western Surety, insofar as it derives from her state law claim against the sheriff, will likewise be remanded to state court.

Accordingly, it is ordered that the summary judgment motion of defendants Hinds County and Sheriff Malcolm E. McMillin, in his individual and official capacities, is granted as it pertains to plaintiff's federal claims. It is likewise ordered that Western Surety's motion for summary judgment is granted to the extent of plaintiff's federal claims against Sheriff McMillin. It is further ordered that the John Doe defendant is dismissed. And finally, it is ordered that the remaining state law claims against Hinds County and Sheriff McMillin, as well as the claims against Western Surety that are premised on those state law claims against the sheriff, are remanded to the Circuit Court of Hinds County, First Judicial District.

ORDERED.