Bridget BRADLEY, On Behalf of the Wrongful Death Beneficiaries of Roy Bradley, Jr., Plaintiff

v.

The CITY OF JACKSON, MISSISSIPPI; Mayor Frank Melton; Jackson Police Officer L.V. Gator; Chief of Police Shirlene Anderson and her Successors; Hinds County Sheriff Malcolm McMillin; Hinds County Sheriff "John Doe"; and G & K Services, Co., Defendants.

Civil Action No. 3:08CV261TSL–JCS.

United States District Court, S.D. Mississippi, Jackson Division.

Nov. 24, 2008.

1. The City also argues in support of its motion that plaintiff has no evidence that illegitimate animus or ill will motivated the officers' actions with respect to Mr. Bynum. Plaintiff contends otherwise. The court need not and does not reach this issue.

Ermea J. Russell, The Russell Law Firm, PLLC, Jackson, MS, for Plaintiff.

Pieter Teeuwissen, Pieter Teeuwissen, PLLC, Claire Barker Hawkins, City of Jackson, James Anderson, Jr., Office of the City Attorney, J. Lawson Hester, Michelle Tolle High, Page, Kruger & Holland, P.A., Jackson, MS, Keith D. Obert, William F. Brown, Obert Law Group, P.A., Madison, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Hinds County Sheriff Malcolm McMillin for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Bridget Bradley, on behalf of the wrongful death beneficiaries of Roy Bradley, Jr., has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

In her complaint, plaintiff alleges the following: On September 23, 2007, an off-duty employee of the Hinds County Sheriff's Department, while wearing his official uniform and driving his official Sheriff's Department vehicle, made a traffic stop of Roy Bradley, Jr. At the time, the officer was allegedly engaged in providing private security services for an area business. Following the stop, the deputy, using his Hinds County Sheriff's Department official equipment, radioed in and determined that there was an outstanding warrant from the City of Jackson for Bradley's arrest for unpaid parking tickets. The deputy placed Bradley under arrest, handcuffed him and placed him in the deputy's official Sheriff's Department vehicle, and then radioed the Jackson Police Department (JPD) to respond to the scene to take custody of Bradley. In response, JPD Officer L.V. Gator arrived at the scene and took custody of Bradley, replacing the deputy's handcuffs with the officer's JPD handcuffs. After the Hinds County deputy departed the scene, Officer Gator removed Bradley from the backseat of the vehicle and removed one of the handcuffs from Bradley, allegedly to get him to sign a form. Officer Gator alleges that Bradley tried to grab his weapon and in self-defense, Gator shot Bradley four times in the abdomen and chest. Bradley died as a result of these gunshot wounds.

Plaintiff filed this wrongful death lawsuit in the Circuit Court of Hinds County, Mississippi alleging violations of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983, as well as state law claims of negligent and/or intentional infliction of emotional distress and for loss of consortium against a number of defendants, including the City of Jackson, JPD's chief of police, JPD Officer Gator, Hinds County Sheriff Malcolm McMillin, in his individual and official capacities, the Hinds County Deputy who arrested Bradley (identified only as "John Doe"), and G & K Services Co., alleged to be the private employer for which "John Doe" was employed at the time he stopped and arrested Bradley.[1] Sheriff McMillin has filed the present motion for summary judgment as to all plaintiff's claims against him.

As to plaintiff's § 1983 claim against him in his individual capacity, Sheriff McMillin argues that he cannot be liable in his individual capacity because he had no per-

---

1. Plaintiff has alleged that the deputy was employed by defendant G & K Services at the time of the incident. However, G & K has denied that it employed the deputy and claims that his employer was instead Cain Lithogra-phers, another business located in the same shopping center. Thus, G & K has recently moved to add as a defendant Cain Lithographers as a necessary party.

sonal involvement in the events leading to Bradley's death and cannot be held vicariously liable, and because there is no basis for imposing supervisory liability against him, and because in any event, he is entitled to qualified immunity.

Plaintiff does not contend that Sheriff McMillin had any direct personal involvement in the events leading to the shooting death of her son. However, she maintains that Sheriff McMillin is nevertheless individually liable for her son's death because his illegal policy of allowing deputies to use Sheriff's Department equipment while engaged in off-duty private security work made it possible for the officer to make the stop of her decedent which set in motion the chain of events which led to his death. In the court's opinion, plaintiff's claim fails on a number of bases, including that she has not shown that the challenged policy was unlawful or at least that Sheriff McMillin could not reasonably have concluded that it was permissible to allow the deputy's off-duty use of Sheriff's Department equipment; she has not established any basis for finding deliberate indifference by Sheriff McMillin; and, perhaps most conspicuously, she has not established that her son's death was proximately caused by Sheriff McMillin's allegedly unlawful policy.

■ Under well-settled legal principles, in order for a supervisory official to be found liable under § 1983, he must have been personally involved in conduct causing the alleged deprivation of constitutional rights, or there must be a causal connection between *his own actions* and the constitutional violation sought to be redressed. *Robinson v. Louisiana,* Civil Action No. 05–1016–C, 2008 WL 4693248, *2 (M.D.La. Sept. 23, 2008) (citing *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983)). Where a supervisory official had no direct personal participation in the alleged constitutional violation, "the plaintiff must al-

lege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law." *Id.* (citing *Lozano* ). This principle flows from the rule that "[a] supervisory official cannot be held individually liable under § 1983 for the actions of subordinates on any theory of *vicarious liability;* only the official's direct acts or omissions will give rise to individual liability." *Alton v. Texas A & M Univ.,* 168 F.3d 196, 200 (5th Cir.1999). *See Monell v. Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that under § 1983, supervisory officials cannot be held vicariously liable for the actions of their subordinates).

The circumstances in which a supervisory official may be held liable under § 1983 even in the absence of participation in the specific constitutional deprivation have been summarized as follows:

Without personal participation by an official, supervisory liability under Section 1983 can exist only where the official "implement[s] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.' " [*Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987) ] (citations omitted). *See also Clark v. McMillin,* 932 F.Supp. 789, 790 (S.D.Miss.1996) (in order to prevail on claim against sheriff in his individual capacity, plaintiff "must show that he affirmatively participated in acts that resulted in the alleged constitutional deprivation, or that he implemented unconstitutional policies that causally resulted in" injury). Alternatively, a supervisory officer not personally involved in the alleged wrongdoing can be liable if he failed to train or supervise the officers involved, there is a causal connection

between the alleged failure to supervise or train and the alleged violation of plaintiff's rights, and this failure to train or supervise constitutes deliberate indifference. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir.2001) (citations omitted).

*Miley v. Jones County Jail*, Civil Action No. 2:05cv2072–KS–MTP, 2007 WL 2159334, at *6 (S.D.Miss. July 25, 2007). *See also Brooks v. Stringer*, Civil Action No. 2:04CV120KS–MTP, 2007 WL 1087487, at *12 (S.D. Miss. April 10, 2007) (recognizing that a plaintiff may establish individual liability of sheriff by showing that he "implemented an unconstitutional policy or lack of policy" which caused the plaintiff's injuries).

▆ Plaintiff herein does not contend that Sheriff McMillin implemented an unconstitutional policy, but rather charges that his policy of allowing the use of Sheriff's Department equipment by off-duty deputies violated state law, and that this violation proximately led to her son's death. The Fifth Circuit has held that a state supervisor's breach of a state-law duty can give rise to direct liability under § 1983 where the plaintiff shows that: "(1) the [supervisor] failed to supervise or train the [subordinate], (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir.1998) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir.1986)). The Fifth Circuit explained the rationale for this rule in *Doe v. Rains County Independent School District*, 66 F.3d 1402, 1413 (5th Cir.1995), stating:

> Where a supervisory official breached a state-law duty with deliberate indifference toward a resulting constitutional injury, he misused the state authority conferred on him to supervise and control his subordinates. The supervisor's failure to act, coupled with his deliberate indifference, was tantamount to a conscious decision to allow the alleged constitutional injury to occur or persist. This conclusion obtains because the state official was responsible for preventing the constitutional injury; his failure to do so rendered him directly liable for the deprivation that his subordinate perpetrated. Such a supervisory official is liable under § 1983 not because he committed a distinct constitutional violation by breaching his duty to supervise, but because his failure to control his subordinate rendered him responsible for the resulting subordinate misconduct-essentially, he was a legal participant.

66 F.3d at 1413.

In the case at bar, plaintiff argues that state law prohibited the use of Sheriff's Department equipment, other than the uniform and weapon, by off-duty officers, and that Sheriff McMillin not only failed to train his deputies that such equipment could not lawfully be used by them for off-duty employment but went so far as to adopt a policy affirmatively allowing such off-duty use. She claims that his actions in this regard were deliberately indifferent to the rights of persons with whom the deputies would come in contact, and that his actions led directly to the shooting death of Roy Bradley.

Mississippi Code Annotated § 17–25–11, on which plaintiff relies, provides that certified law enforcement officers employed by a county or municipality "may wear the official uniform and may utilize the official firearm issued by the employing jurisdiction while in the performance of private security services in off-duty hours" if such use is approved by the governing authority of the county or municipality. In the case

of a county, the sheriff must also approve such use; and his must "be on an employee-by-employee basis and not by general order." As permitted by this statute, Sheriff McMillin had in place General Order 92–02–03, which defines, outlines and describes accepted forms of off-duty employment, including "law enforcement related" off-duty employment, and which provides (consistent with the statute) that an officer must request and obtain prior approval from the commander of operations before engaging in such employment.

The General Order further provides

Use of Sheriff's Office uniforms, equipment, and vehicles shall be permitted in conjunction with law enforcement related employment when ... such use provides safety for the Deputy and establishes a uniformed presence which is in the best interest of the community and the number of vehicles at any site does not exceed that which is necessary for safe and effective service.

Plaintiff does not deny that the statute authorizes the use of an officer's official uniform and weapon for off-duty employment, but she contends that authorization for use of a Sheriff's Department vehicle and other equipment, including a radio and blue lights, violates the statute.

In his motion, Sheriff McMillin notes that, by its terms, § 17–25–11 does not prohibit a county or its sheriff from authorizing an off-duty deputy to use a sheriff's department vehicle or other equipment while engaged in private security work. The statute simply does not address the issue, and there is no other statute or law which provides that the approved use of a sheriff's department vehicle or other equipment by a deputy engaged in private security work is illegal. He submits, therefore, that his policy of allowing the off-duty use of such equipment (and of not training his officers that they may not use such equipment) is not objectively unrea-

sonable, entitling him to qualified immunity. See Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir.2008) ("For immunity to apply, the 'actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law.'") (citation omitted). He argues, moreover, that his policy to allow off-duty use of the Sheriff's Department vehicle, radio and lights in certain situations (and hence his failure to train that this was not allowed) did not amount to either reckless disregard or deliberate indifference. Finally, he argues that there is no reasonable basis for finding that his policy of allowing the use of Sheriff's Department vehicles and other equipment was a *proximate cause* of the allegedly intentional shooting by an individual officer of another jurisdiction after the deputy who made the initial arrest using his Sheriff's Department equipment had already relinquished custody of the arrestee and departed the scene.

In response to defendant's motion, plaintiff points out there is no separate statutory authority which *allows* the sheriff of a county to authorize the use of an official vehicle and/or other equipment such as the official radio and/or lights used to make traffic stops, and she suggests that by expressly authorizing the off-duty use of certain official Sheriff's Department items, i.e., the uniform and weapon, § 17–25–11 by implication excludes the off-duty use of all other Sheriff's Department items and equipment. She concludes that Sheriff McMillin should have known that his policy violated state law and further should have recognized "the dangers inherent with allowing unfettered use of official vehicles and equipment by deputies performing off-duty employment which is law enforcement related," and that his failure to train his deputies "on the limits of authority to use the official vehicle and attendant

equipment in traffic stops that result in a constitutional violation" is objectively unreasonable.

Regardless of whether the statute at issue could be reasonably interpreted to prohibit the off-duty use of any official Sheriff's Department equipment other than that specifically authorized, i.e., the uniform and weapon, the statute does not clearly prohibit such off-duty use of other equipment and thus it is by no means apparent that Sheriff's McMillin's policy runs afoul of state law. However, even if it did, the policy allowing such use, and the consequent failure to train his deputies to the contrary, does not amount to deliberate indifference. "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). "An official must know of and disregard an excessive risk [of a constitutional violation]; the official must both be aware of facts from which the inference could be drawn that a substantial risk ... exists, and he must also draw the inference." *Corley v. Prator*, No. 07–31002, 2008 WL 3911070, *3 (5th Cir. Aug. 25, 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)); *see also Smith v. Brenoettsy*, 158 F.3d at 912 (showing of deliberate indifference requires proof that official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm [i.e., an actionable constitutional violation] exist[ed], and he also [drew] the inference"). Plaintiff has failed to suggest any basis for concluding that Sheriff McMillin acted with deliberate indifference to a potential constitutional violation solely by allowing a trained and certified law enforcement officer to use a Sheriff's Department vehicle, radio and lights when performing off-duty private security services, particularly where the policy authorizes such use only when it "provides safety for the Deputy and establishes a uniformed presence which is in the best interest of the community and the number of vehicles at any site does not exceed that which is necessary for safe and effective service."

Notably, plaintiff has not alleged that the sheriff's deputy violated her decedent's constitutional rights when he stopped him for a traffic offense; she does not deny that there was an outstanding warrant for her son's arrest or contend that the arrest itself was unlawful; she does not charge that the arresting officer used excessive force in making the arrest; and she does not contend that the officer violated her son's constitutional rights by turning him over to the custody of an officer of the Jackson Police Department. She complains only that the officer would not have been able to make the stop in the first place because he was in a Sheriff's Department vehicle with Sheriff's Department blue lights, and that he was only able to discover the warrant by using his Sheriff's Department-issued radio. However, the use of the equipment was not itself a constitutional violation, and did not cause a constitutional violation by the deputy who used the equipment. Nor did the use of the equipment proximately cause the constitutional deprivation of which plaintiff complains, namely, JPD Officer Gator's shooting of her son.

To establish proximate cause under § 1983, plaintiff must establish both cause in fact and foreseeability. *See Morin v. Moore*, 309 F.3d 316, 326 (5th Cir. 2002). Ordinarily, a third-party's intervening criminal conduct negates foreseeability, except that when the third party's criminal conduct is a foreseeable result of a defendant's prior negligence, the criminal act will not excuse the previous tortfeasor's liability. *Id.* at 327 n. 4. *See also Glover ex rel. Glover v. Jackson State Univ.*, 968 So.2d 1267, 1289 (Miss.2007) ("As a general rule of thumb, criminal acts can be intervening causes which break the

causal connection with the defendant's negligent act, *if the criminal act is not within the realm of reasonable foreseeability."*) (quoting *O'Cain v. Harvey Freeman & Sons, Inc.,* 603 So.2d 824, 830 (Miss. 1991)). There is nothing whatsoever to suggest that the arresting officer here should have foreseen that another officer would shoot and kill Roy Bradley.

For all these reasons, the court concludes that Sheriff McMillin is entitled to summary judgment as to plaintiff's claims against him in his individual capacity. And while Sheriff McMillin has not clearly sought summary judgment for plaintiff's official capacity claims against him,[2] it is clear from the record that she cannot establish an official capacity claim against him, for there is no evidence of an unconstitutional policy, or deliberate indifference or proximate cause. Accordingly, any official capacity claim against him will be dismissed, as well.

■ Sheriff McMillin has moved for summary judgment as to plaintiff's state law claims on a variety of grounds, including (1) that the claims are subject to and barred by specific provisions of the Mississippi Tort Claims Act, Miss.Code Ann. § 11–46–1 *et seq.,* namely, the exemptions from waiver for police protection, *see* § 11–46–9(1)(c), for the performance of discretionary functions, *see* § 11–46–9(d), and for performance of or failure to perform a statute, *see* § 11–46–9(b); and (2) because plaintiff's allegations and proof do not support her claims, which are for negligent and intentional infliction of emotional distress. In response to Sheriff McMillin's motion, which appears meritorious on

its face, plaintiff declares that Sheriff McMillin is not entitled to any exemption under the MTCA because he exceeded his statutory authority by establishing a policy authorizing use of official vehicles and attendant equipment and then failed to establish a policy for training and supervision regarding the limits of use of such equipment by off-duty deputies in private employment. In the court's opinion, not only is it manifest that Sheriff McMillin is protected from liability by the police protection exception under § 11–46–9(1)(c), which requires proof that he "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury," but also, even if he were not exempt, plaintiff's allegations and proof do not support her claims in any event. *See Robinson v. Hill City Oil Co., Inc.,* — So.2d ——, 2008 WL 2894668 (Miss.Ct.App.2008) ("To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that the defendant's conduct was reckless, intentional, and so outrageous to such an extreme degree that it exceeds the bounds of decency and, thus, is not tolerated by a civilized community."); *Waters v. Allegue,* 980 So.2d 314, 318 (Miss.Ct.App.2008) ("A plaintiff may not recover for a claim of negligent infliction of emotional distress without showing that he or she suffered a physical injury.").

Based on the foregoing, it is ordered that Sheriff McMillin's motion for summary judgment is granted.

---

**2.** There may have been some confusion as to whether plaintiff had asserted a claim against Sheriff McMillin in his official capacity. Plaintiff originally sued the Hinds County Sheriff's Department and Board of Supervisors, in addition to Sheriff McMillin, and thus may have considered an official capacity claim against him superfluous. Following the court's sua sponte dismissal of these defendants, although plaintiff did not seek to amend to add an official capacity claim against Sheriff McMillin, it has been clear from the outset that she intended to hold the County liable for her son's death.